**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shanice Alston; and Nick Osorio, *on behalf of themselves and all others similarly situated*,<br><br>     *Plaintiffs*,<br><br> -against-<br><br>Citywide Mobile Response Corp.; Warren Golden; and Henry Halpert,<br><br>     *Defendants*. | **FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs, Shanice Alston, and Nick Osorio (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated employees, as the class representatives, by and through their undersigned attorney, Mohammed Gangat, Esq., as and for their Complaint against Defendants, Citywide Mobile Response Corp., Warren Golden, and Henry Halpert, (collectively, "Defendants"), allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

### NATURE OF THE ACTION

1. Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA"), they are entitled to recover from Defendants: (1) unpaid overtime wages; (2) liquidated damages; (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid overtime wages; (2) statutory damages arising out of Defendants' failure to provide required wage and hour law notices; (3) liquidated damages

and civil penalties pursuant to the NYLL and the New York State Wage Theft Prevention Act; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

3.      This action is brought as a collective action pursuant to 29 U.S.C. §216(b) and as a state-law class action under Fed. R. Civ. P. 23(b)(3).

4.      In addition to seeking recovery for Plaintiffs, this lawsuit also seeks to recover unpaid overtime compensation, liquidated damages, statutory penalties, prejudgment and post-judgment interest, and attorneys' fees and costs for similarly situated employees.

5.      Plaintiff, Shanice Alston, also brings a claim for retaliatory termination in violation of the NYLL § 215(a)(3), said retaliation arising from the circumstances of Defendants terminating her after she filed a petition with the Local 741 Specialty Trades Union ("the Union") that she did not receive the overtime compensation when she was deployed during the Covid-19 pandemic as required by the FLSA and NYLL.

6.      The relevant statutory period for Plaintiffs' federal claims under the FLSA is the three-year period preceding the date of the filing of the complaint, and Plaintiffs' state law claims under the NYLL is the six-year period preceding the date of the filing of the complaint.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

9.      Plaintiff, Shanice Alston, is an adult, over eighteen years old, and a resident of Kings County, New York.

10.     Plaintiff, Nick Osorio, is an adult, over eighteen years old, and a resident of Queens County, New York.

11.     Defendant, Citywide Mobile Response Corp. ("Corporate Defendant"), is a domestic business corporation organized and existing under the laws of the State of New York, with a process services address of 1624 STILLWELL AVE, BRONX, NEW YORK, 10461.

12.     Upon information and belief, Defendant Warren Golden is the owner, shareholder, director, supervisor, managing agent, and/or proprietor, of Corporate Defendant.

13.     Upon information and belief, Defendant Henry Halpert is the owner, shareholder, director, supervisor, managing agent, and/or proprietor, of Corporate Defendant.

14.     Defendants, Warren Golden, and Henry Halpert, (collectively, "Individual Defendants"), actively participate in the day-to-day operations of Corporate Defendant, and acted intentionally and maliciously, and are an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the Regulations thereunder, and are jointly and severally liable with Corporate Defendant.

15.     Defendants run an ambulance service company and provide the ambulance service in the New York City area.

16.     Upon information and belief, Defendants exercise control over the terms and conditions of their employees' employment, including Plaintiffs' employment, in that they have the power to: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine

work schedules, (iv) supervise and control the work of the employees, and (v) otherwise affect the quality of the employees' employment.

17.     Upon information and belief, at all times relevant to the allegations in this Complaint, Corporate Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that at all relevant times it (i) had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) had an annual gross volume of sales of not less than $500,000.

18.     Defendants continuously employed Plaintiffs to work as non-exempt employees of Corporate Defendant.

19.     At all relevant times, the work performed by Plaintiffs was essential to the business owned and operated by Defendants.

20.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and NYLL.

21.     Defendants knowingly and willfully failed to accurately provide Plaintiffs their wage notices in direct contravention of the New York Wage Theft Prevention Act.

22.     Defendants knowingly and willfully terminated Plaintiff Shanice Alston, after she brought a petition to the Union that she did not receive overtime compensation when she was deployed during the Covid-19 pandemic as required by the FLSA and NYLL.

## **STATEMENT OF FACTS**

23.     Plaintiffs at all relevant times were covered employees within the meaning of the FLSA and NYLL.

*Plaintiff Shanice Alston's Deployment*

24.     On or about July 15, 2019, Plaintiff Shanice Alston was hired by Defendants to work as a paramedic for Defendants' ambulance service. She was a member of the Local 741 Specialty Trades Union. Her employment with Defendants ended on October 25, 2020.

25.     Plaintiff Shanice Alston's job duties primarily consisted of providing paramedic services.

26.     Upon information and belief, from April 1, 2020, to May 28, 2020, during the Covid-19 pandemic, Plaintiff Shanice Alston was deployed by Corporate Defendant to work as a paramedic with the Federal Emergency Management Agency ("FEMA"). FEMA has a contract with American Medical Response, Inc. ("AMR"). AMR provided FEMA with ambulance service during the Covid-19 pandemic, and AMR subcontracted partial ambulance services to Corporate Defendant.

27.     During the deployment, which was from April 1, 2020 to May 28, 2020, Plaintiff Shanice Alston continuously worked as a paramedic and only took one day off due to her work partner's illness.

28.     During the deployment, Plaintiff Shanice Alston slept at a hotel paid for by FEMA. Her workday would start with being picked up on a bus at the hotel. The bus would go to a designated site where the deployed units could pick up ambulances. Then, Plaintiff Shanice Alston and her unit members would respond to the 911 dispatch. After that, they would return to the designated site to get on the bus and return to the hotel. Additionally, she was on call and would be recalled for duty between the time she returned to the hotel and the start time of the next shift.

29.     During the deployment, the bus pick-up and drop-off times varied. The pick-up time was based on the need for the deployed units to fill the slots for the ambulances when there

was no unit working. The drop-off time was based on when the transportation was available to drop off. Also, Plaintiff Shanice Alston was provided with a work phone and a portable radio by the FEMA to receive notices to be picked up and recalled for duty.

30.     During the deployment, Plaintiff Shanice Alston never clocked in or clocked out to track her work hours. Defendants paid her at a fixed weekly salary at the rate of 168 hours (24hrs*7=168hrs) multiplied by $30, which is $5,040 per week.

31.     Plaintiff Shanice Alston never received any documents regarding how wage payment would be made during the deployment.

***Plaintiff Nick Osorio's Deployment***

32.     On December 19, 2019, Plaintiff Nick Osorio was employed by Defendants to work as an Emergency Medical Technician (the "EMT") for Defendants' ambulance service. He was a member of the Local 741 Specialty Trades Union. His employment with Defendants ended in September 2020.

33.     Plaintiff Nick Osorio's job duties primarily consisted of providing patients with medical service and other treatments.

34.     Upon information and belief, from April 1, 2020 to May 3, 2020, during the Covid-19 pandemic, Plaintiff Nick Osorio was deployed by Corporate Defendant to work as an EMT with FEMA. FEMA has a contract with AMR. AMR provided FEMA with ambulance service during the Covid-19 pandemic, and AMR subcontracted partial ambulance services to Corporate Defendant.

35.     During the deployment, which was from April 1, 2020 to May 3, 2020, Plaintiff Nick Osorio continuously worked as an EMT and worked 33 days in total.

36.     During the deployment, Plaintiff Nick Osorio slept at a hotel paid for by FEMA. He was provided with a work phone and a portable radio by FEMA to receive notices regarding pick-up and times when recalled for duty. For each day, he would be out of the hotel by 10:00 a.m. to get on a bus. The bus would go to a designated site where the deployed units could pick up ambulances. Then, Plaintiff Nick Osorio and his unit members would pick up a radio to respond to the 911 dispatch. At about 2:30 a.m., they would return to the designated location to get on the bus and arrive back at the hotel around 3:00 a.m. Additionally, he was on call and could be recalled for duty between the time he returned to the hotel and the start time of the next shift, which is from 3:00 a.m. to 10:00 a.m.

37.     During the deployment, Plaintiff Nick Osorio never clocked in or clocked out to track his work hours. Defendants paid him at a fixed weekly salary at the rate of 168 hours (24hrs*7=168hrs) multiplied by $17.00, which is $2,856.00 per week.

38.     Plaintiff Nick Osorio never received any documents regarding how wage payment would be made during the deployment.

39.     After Plaintiff Nick Osorio completed the deployment in May 2020, he continued to work for Defendants as a full-time EMT. During this period, he would clock in and clock out. He was paid $17.00 per hour and received overtime compensation for the hours he worked more than forty per week.

***Overtime Rate Notice From Employer***

40.     On April 3, 2020, Orlando Serrano, then director of operations for Corporate Defendant, sent an email to all employees of Defendants. The email states that due to the Covid-19 pandemic, the overtime rate for all employees would be changed to "double time" of the regular

rate for work more than forty hours per week. Plaintiff Shanice Alston texted Orlando Serrano asking about her pay rate, but she did not receive any response.

41.     On April 14, 2020, Plaintiff Shanice Alston sent an email to Corporate Defendant's Payroll Office, asking whether she would receive overtime pay for the hours worked over forty per week and whether there was a contract regarding pay during the deployment. But she did not receive any response.

42.     On June 29, 2020, Plaintiff Shanice Alston sent another email to Denise Adames, the human resources specialist for Corporate Defendant, to complain that she did not receive any overtime compensation for her deployment period.

43.     On July 1, 2020, Plaintiff Shanice Alston received a response regarding her pay rate and overtime compensation for the first time. Denise Adames responded to her that all deployed employees were converted to weekly salaries at the rate of 168 hours (24hrs*7=168hrs) multiplied by their hourly rates and there was no need for Defendants to track the deployment employees' work hours during the deployment.

44.     On July 25, 2020, Plaintiff Shanice Alston brought a petition with the Union to require Corporate Defendant to pay the owed overtime compensation during the deployment. Plaintiff Nick Osorio also joined this petition.

45.     During the deployment, Plaintiffs continuously worked more than 40 hours per week and never received any overtime compensation. Nor did Plaintiffs receive any wage notice or paperwork regarding their pay practice.

***Retaliatory Termination against Plaintiff Shanice Alston***

46.     After Plaintiff Shanice Alston completed the deployment in June 2020, she continued to work for Defendants as a full-time paramedic. During this period, she would clock in

8

and clock out. She was paid $30 per hour, and received overtime compensation for the hours she worked more than forty per week.

47.     In September 2020, Plaintiff Shanice Alston took a leave of absence for personal reasons. On September 30, Plaintiff Shanice Alston sent an email to Serge Gourgue, the Risk and Safety Manager of Corporate Defendant, asking to return to work and change her work status.

48.     Plaintiff Shanice Alston also talked to Marvin Jackosn, the Advanced Life Support Supervisor of Corporate Defendant, asking to change her work status from full-time to per diem. Marvin Jackson asked her to send him and Defendants' management team an email requesting the change of work status.

49.     On October 25, 2020, as instructed by Marvin Jackosn, Plaintiff Shanice Alston sent an email of the Change of Status Letter to Marvin Jackson, Serge Gourgue, and Linda Duhaime, the Human Resources Manager of Corporate Defendant. The letter stated that she would not be able to work on a consistent basis for Defendants. She thought that the letter implied that she wanted to work per diem.

50.     Without checking with Plaintiff Shanice Alston about the Change of Status Letter, Defendants mistakenly asserted that Plaintiff Shanice Alston resigned on October 25, 2020.

51.     In November 2020, Plaintiff Shanice Alston contacted Andrew Franze, the Union Representative. She asked Andrew Franze to speak with the Individual Defendant, Warren Golden, to permit her to return to work for Defendants.

52.     Andrew Franze then told Plaintiff Shanice Alston that Defendant, Warren Golden, refused to allow her to return to work, because she brought a petition to the Union, to request overtime compensation for the period of the deployment.

53.     At no point during the deployment did Defendants inform Plaintiffs of the overtime provisions of the FLSA or NYLL.

54.     During the deployment, Defendants knowingly and willfully failed to compensate the deployed employees for the FLSA overtime rate (of time and one-half), and the New York State overtime rate (of time and one-half), in direct violation of the FLSA and NYLL and the supporting federal and state regulations.

55.     Defendants did not furnish Plaintiffs with wage notices, as required by the NYLL, Article 6, §§ 190 et seq.

56.     Upon information and belief, during the course of Plaintiffs' deployment, Defendants failed to maintain accurate and sufficient time records.

## COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiffs bring this action individually and as the class representatives on behalf of the "Proposed FLSA Collective" defined as:

> All employees who were deployed by Corporate Defendant during the Covid-19 pandemic located in New York State who give their consent, in writing, to become party plaintiffs (hereinafter the "FLSA Class").

58.     Upon information and belief, the total number of members of the proposed collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

59.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

60.     This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

61.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, in as much as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

62.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

> (1) Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

(2)  What proof of hours worked is sufficient where the employer fails in its duty to maintain time records during Plaintiffs and the Collective Action Members' deployment;

(3)  Whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

(4)  Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, and statutory damages, interest, attorneys' fees, and costs and disbursements;

(5)  Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime premiums for hours worked in excess of 40 hours per workweek.

63.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

64.    Plaintiffs and other similarly situated employees have been substantially damaged by Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

65.    In addition to bringing this action as a proposed collective action to remedy violations of the FLSA, Plaintiffs also bring this action on behalf of a Proposed Rule 23 Class, under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and consisting of:

All employees who were deployed by Corporate Defendant during the Covid-19 pandemic located in New York State who give their consent, in writing, to become party plaintiffs (hereinafter, the "New York Class").

66.    Upon information and belief, the persons in the Proposed Class are so numerous that joinder of all members is impracticable. Although the identity and precise number of such persons is unknown, and the facts upon which the calculation of that number may be ascertained are presently within the sole control of Defendants, the Proposed Class consists of all non-

managerial current and former employees and, therefore, is so numerous that joinder is impracticable and most of whom would not be likely to file individual suits because they lack financial resources, access to attorneys, or knowledge of their claims.

67.     The claims of Plaintiffs are typical of the claims of the Proposed Class, and a Rule 23 class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individuals lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

68.     Defendants have acted on grounds generally applicable to the Proposed Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Proposed Class as a whole.

69.     Plaintiffs have committed themselves to pursuing this action and have retained counsel experienced in employment law and class action litigation.

70.     Plaintiffs will fairly and adequately protect the interests of the Proposed Class. Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class Members to represent their interests fairly and adequately, and that they must consider their interests just as they would represent and consider their own interests, and that they may not favor their own interests over those of the Class Members.

71.     Plaintiffs recognize that any resolution of a Rule 23 class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class. Plaintiffs understand that in order to provide adequate representation, they must remain informed of litigation developments and that they may be called upon to testify in depositions and at trial.

72.     Plaintiffs have the same interests in this matter as all other members of the Proposed Class, and Plaintiffs' claims are typical of the Proposed Class.

73.     There are questions of law and fact common to the Proposed Class which predominate over any questions solely affecting the individual members of the Proposed Class, including but not limited to:

(1) Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York Labor Law;

(2) What proof of hours worked is sufficient where the employer fails in its duty to maintain time records during Plaintiffs' and the Class Members' deployment;

(3) Whether Defendants' violations of the NYLL are willful as that term is used within the context of the NYLL;

(4) Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, and statutory damages, interest, attorneys' fees, and costs and disbursements;

(5) Whether Defendants failed to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of 40 hours per workweek.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

*Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

74.     Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

75.     At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14

76.     Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C.  §§ 206(a) and 207(a).

77.     At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

78.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

79.     Plaintiffs were entitled to be paid at the regular rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

80.     Defendants failed to pay Plaintiffs overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

81.     During the course of Plaintiffs' deployment, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs for all hours worked in excess of forty (40) hours per work week, which violated the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

82.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiffs.

83.     Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l(c) and 215(a).

84.     Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

85.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA.

86.     Due to the reckless, willful, and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

87.     Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE NYLL

*Brought on behalf of Plaintiffs and the Proposed Rule 23 Class*

88.     Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

89.     Defendants employed Plaintiffs within the meaning of New York Labor Law §§ 2 and 651.

90.     Defendants knowingly and willfully violated the rights of Plaintiffs by failing to pay Plaintiffs the required overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

91.     Defendants failed to properly disclose or apprise Plaintiffs of their rights under the NYLL.

92.     During Plaintiffs' deployment, Defendants failed to keep true and accurate records of hours worked by each deployed employee covered by an hourly wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

93.     Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants the difference between their actual wages and the amounts owed under the NYLL. The deficiency accounts for overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law§§ 663(1), 198.

94.     Plaintiffs are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE WAGE NOTICE AND WAGE STATEMENT

### PROVISIONS OF THE NYLL

#### *Brought on behalf of Plaintiffs and the Proposed Rule 23 Class*

95.     Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

96.     During Plaintiffs' deployment, Defendants have willfully failed to supply Plaintiffs with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer;

any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

97.     During Plaintiffs' deployment, due to Defendants' knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

98.     During Plaintiffs' deployment, Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

99.     During Plaintiffs' deployment, due to Defendants' knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

100.     Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiffs are entitled to statutory penalties of fifty dollars each day that Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

101.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiffs are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS OF THE NYLL

#### *Brought on behalf of Plaintiffs and the Proposed Rule 23 Class*

102.    Plaintiffs reallege and re-aver each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

103.    Defendants did not timely pay Plaintiffs in full for all hours worked at their agreed-upon rate of pay, in violation of NYLL §191.

104.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE RETALIATION PROVISIONS OF THE FLSA

#### *Brought on behalf of Plaintiff Shanice Alston*

105.    Plaintiff Shanice Alston realleges and re-avers each and every allegation and statement contained in the above paragraphs of this Complaint as if fully set forth herein.

106.    Plaintiff Shanice Alston never resigned her employment with Defendants. Without any verification, Defendants erroneously asserted that Plaintiff's Change of Status Letter was a resignation.

107.     Defendants violated 29 U.S.C § 215(a)(3) when they terminated Plaintiff Shanice Alston's employment in retaliation after she filed a petition with the Union requesting overtime compensation during the deployment during the Covid-19 pandemic.

108.     Defendants are therefore liable to Plaintiff Shanice Alston for damages under 29 U.S.C. § 216(b).

109.     Defendants are also liable for this conduct under New York State's retaliation law, specifically NYLL § 215 (1)(a) and NYLL § 215(2)(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Shanice Alston, and Nick Osorio, on behalf of themselves and all similarly situated Collective Action Members and Class members, respectfully request that this Court grant the following relief:

i.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who were deployed by Defendants as hourly workers during the Covid-19 Pandemic located at New York State, and of their right to join this lawsuit if they belief they were denied proper wages;

ii.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

iii.      Designation of Plaintiffs as the representatives of the Rule 23 Class, and counsel of record as Class Counsel;

iv.      An award for unpaid overtime compensation due under the FLSA and NYLL;

v.      An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

vi.      An award of liquidated damages as a result of Defendants' failure to pay overtime

compensation pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

vii.   An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

viii.   An award of damages arising out of Defendants' failure to make timely payment in full for all hours worked at Plaintiffs' agreed-upon rate of pay;

ix.   An injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL;

x.   An award of damages for unlawful retaliation committed by Defendants under the FLSA and NYLL;

xi.   An award of damages for Defendants' failure to pay overtime compensation at the agreed-upon rate of two times the regular rate for hours Plaintiffs worked over 40 per week;

xii.   An award of prejudgment and post-judgment interest;

xiii.   An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. 216(b) and the NYLL; and

xiv.   Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues.

Dated: New York, New York
        October 6, 2021

Respectfully Submitted,

**LAW OFFICE OF MOHAMMED GANGAT**

Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiffs*