UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANICE ALSTON and NICK OSORIO, on behalf of themselves and all others similarly situated,<br><br>                 Plaintiffs,<br><br>    -against-<br><br>CITYWIDE MOBILE RESPONSE CORP., WARREN GOLDEN, and HENRY HALPERT,<br><br>                 Defendants. | Civil Action No.:<br>1:21-cv-08380-JHR-OTW |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PECKAR & ABRAMSON, P.C.
*Attorneys for Defendants*
1325 Avenue of the Americas, 10th Floor
New York, New York 10019
(212) 382-0909
gbegg@pecklaw.com

On the Brief:

Gregory R. Begg, Esq..

## TABLE OF CONTENTS

Page

PRELIMINARY AND UNDISPUTED FACT STATEMENT ...................................................... 1

LEGAL ARGUMENT ....................................................................................................... 4

I.      LEGAL STANDARD FOR DENYING SUMMARY JUDGMENT ................................. 4

II.     PLAINTIFFS' OVERTIME WAGE CLAIMS FAIL AS A MATTER OF LAW. ............ 5

        A.  Plaintiffs Cannot Proceed to Trial on Their Claims for Unpaid Overtime Because Their Salaried Pay Exceeded the Amount Owed Under the Fluctuating Workweek Method ......................................................................................... 5

        B.  Plaintiffs Were Not "On Call" So As to Give Rise to Compensable Time for 24 Hours Per Day Seven Days Per Week Which Is Fatal to Their Unpaid Overtime Claims ........................................................................................................ 11

III.    PLAINTIFFS' WAGE THEFT PREVENTION ACT CLAIMS MUST BE DISMISSED AS A MATTER OF LAW FOR THE SAME REASONS THAT PLAINTIFFS' OVERTIME CLAIMS FAIL .................................................................... 15

IV.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PLAINTIFFS' TIMELY PAY CLAIMS UNDER NEW YORK LABOR LAW FAIL FOR THE SAME REASONS THAT PLAINTIFFS' OVERTIME CLAIMS FAIL ......................... 17

V.     PLAINTIFFS' CLAIMS AGAINST DEFENDANTS GOLDEN AND HALPERT MUST BE DISMISSED AS A MATTER OF LAW AS INDIVIDUALS BECAUSE THEY DID NOT SO CONTROL THE PLAINTIFFS' EMPLOYMENT THAT THE "ECONOMIC REALITY" IS THAT THEY ARE PLAINTIFFS' EMPLOYER ....................................................................................... 18

CONCLUSION .............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>C</u>ASES

*Petersen Energía Inversora, S.A.U. v. Argentine Republic*,
  Nos. 15 Civ. 2739 and 16 Civ. 8569, 2023 WL 2746022 (S.D.N.Y. Mar. 31, 2023) .................4

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946).................................................................................................................5, 14

*Armour & Co. v. Wantock*,
  323 U.S. 126 (1944)...............................................................................................................12, 13

*Bonito v. Avalon Partners, Inc.*,
  106 A.D.3d 625, 967 N.Y.S.2d 19 (1st Dep't 2013) .................................................................19

*Capasso v. Metropolitan Transp. Auth.*,
  198 F. Supp. 2d 452 (S.D.N.Y. 2002)........................................................................................12

*Coppola v. Bear Stearns & Co.*,
  499 F.3d 144 (2d Cir. 2007).........................................................................................................4

*Doo Nam Yang v. ACBL Corp.*,
  427 F. Supp. 2d 327 (S.D.N.Y. 2005)..........................................................................................5

*Espinal v. Sephora USA, Inc.*,
  No. 22 Civ. 03034, 2022 WL 16973328 (S.D.N.Y. Nov. 16, 2022) .........................................17

*Gamero v. Koodo Sushi Corp.*,
  272 F. Supp. 3d 481 (S.D.N.Y. 2017).........................................................................................16

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999)........................................................................................................19

*Hunter v. Planned Bldg. Servs. Inc.*,
  No. 715053/2017, 2018 N.Y. Slip Op. 31541(U), 2018 WL 3392476 (N.Y. Sup. Ct. June 11,
  2018) ...........................................................................................................................................18

*Hussain v. Pak. Int'l Airlines Corp.*,
  No. 11-CV-932, 2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012)..................................................17

*IBP, Inc. v. Alvarez*,
  546 U.S. 21 (2005).......................................................................................................................12

**TABLE OF AUTHORITIES**

Page(s)

*Inclan v. New York Hospitality Group, Inc.*,
  95 F. Supp. 3d 490 (S.D.N.Y. 2015).................................................................5

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013)............................................................................19

*John Schepanski Roofing & Gutters v. Roberts*,
  133 A.D.2d 757, 520 N.Y.S.2d 46 (2d Dep't 1987) ..................................14

*Joza v. WW JFK LLC*,
  No. 07-CV-4153, 2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) ................5

*Matter of Carver v. State of N.Y.*,
  87 A.D.3d 25, 926 N.Y.S.2d 559 (2d Dep't 2011) ...................................19

*Moon v. Kwon*,
  248 F. Supp. 2d 201 (S.D.N.Y. 2002)........................................................13

*Nonnenmann v. City of New York*,
  No. 02-CIV-10131, 2004 WL 1119648 (S.D.N.Y. May 20, 2004) ....................11, 12

*O'Neill v. Mermaid Touring Inc.*,
  968 F. Supp. 2d 572 (S.D.N.Y. 2013).................................................11, 13

*Reich v. N.Y. City Transit Auth.*,
  45 F.3d 646 (2d Cir. 1995)............................................................................12

*Reich v. Southern New England Telecomm. Corp.*,
  121 F.3d 58 (2d Cir. 1997)............................................................................12

*Salinas v. Starjem Restaurant Corp.*,
  123 F. Supp. 3d 442 (S.D.N.Y. 2015)...................................................15, 18

*Singh v. City of New York*,
  524 F.3d 361 (2d Cir. 2008)........................................................................12

*Thomas v. Bed Bath & Beyond Inc.*,
  961 F.3d 598 (2d Cir. 2020).........................................................................7

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
  175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't 2019) ..............................17

# TABLE OF AUTHORITIES

Page(s)

**STATUTES**

29 U.S.C. § 203(d) ........................................................................................................18

29 U.S.C. § 207(a)(1) .......................................................................................................5

29 U.S.C. § 254(a) ..........................................................................................................12

29 U.S.C. § 255 .................................................................................................................5

29 U.S.C. § 215(a)(3) ........................................................................................................2

N.Y. Lab. Law § 195(1) ............................................................................................15, 16

N.Y. Lab. Law § 195(3) ............................................................................................15, 16

N.Y. Lab. Law § 215 (1)(a) ..............................................................................................2

**REGULATIONS**

29 C.F.R. § 553.221(c) ...............................................................................................11, 15

29 C.F.R. § 778.114 ........................................................................................................5, 6

29 C.F.R. § 778.114(a)(3) ................................................................................................11

29 C.F.R. § 778.114(a)(4) ..................................................................................................7

29 C.F.R. § 785.41 ...........................................................................................................12

29 C.F.R § 778.223 ..........................................................................................................11

**RULES**

Fed. R. Civ. P. 56(a)..........................................................................................................4

## PRELIMINARY AND UNDISPUTED FACTS STATEMENT[1]

Plaintiffs Shanice Alston ("Alston") and Nick Osorio ("Osorio" and together with Alston, collectively, "Plaintiffs") were Emergency Medical Technicians ("EMTs") who worked for Defendant Citywide Mobile Response Corp. ("Citywide") to respond to emergency requests received by the Fire Department of New York ("FDNY") through its 911 system. (SOMF ¶¶ 2, 11-12, 18, 21). Although Plaintiffs used Citywide trucks, were on Citywide payroll and their work schedules were set by Citywide to meet FDNY needs, specific work assignments for Plaintiffs were controlled by the FDNY through its electronic dispatch system. (SOMF ¶¶ 21-22, 53). According to FDNY policy, EMTs work either 8- or 12-hour shifts; EMTs are not permitted to work more than 12 hours per day. (SOMF ¶¶ 42, 53). To start their shift, they log onto the FDNY system, then wait for calls from the FDNY to respond to emergency needs. (SOMF ¶¶ 49-50, 56). At the end of the shift, they log off until their next scheduled shift. (SOMF ¶¶ 56).

In this case, Plaintiffs were "deployed" to American Medical Response, Inc. ("AMR") in the early days of the Covid-19 pandemic to provide EMT services as part of AMR's contract with the Federal Emergency Management Agency ("FEMA") in New York City from April 2020 to May 2020 ("Covid-19 Deployment"). (SOMF ¶¶ 15-19, 41, 64). AMR contracts with FEMA to provide EMT services through subcontracts with local ambulance companies, such as Citywide, throughout the United States. (SOMF ¶¶ 15-16). During Plaintiffs' deployment, they remained on Citywide payroll, continued to utilize Citywide ambulances and continued to receive 12-hour work assignments via the FDNY's electronic system, however, AMR supervised and managed their work schedules instead of Citywide. (SOMF ¶¶ 42, 50, 56, 59, 61-62). Given that employees may be

---

[1] Unless otherwise noted, the factual statements referenced herein refer to the factual statements in Defendants' Local Rule 56.1 Counter-Statement of Undisputed Material Facts ("CSOMF") and the Exhibits annexed to the Declaration of Gregory R. Begg, Esq. ("Begg Declaration"), both submitted in opposition to Plaintiffs' motion.

dispatched far from home, the FEMA program routinely provides lodging and a meal allowance for deployed employees. (SOMF ¶¶ 17, 45, 55). For the Covid-19 Deployment, Plaintiffs were not dispatched far from home. (SOMF ¶¶ 2, 18). Rather, they are both New York City residents who were supplied by Citywide to AMR to respond to calls within New York City—the same territory in which they live and work on a regular basis, except that instead of traveling to Citywide in the Bronx to occupy their ambulance at the start of their shift, the trucks were located at the Bronx Zoo, designated by AMR as the truck dispatch location. (SOMF ¶¶ 8, 44, 49, 54, 61). Plaintiffs were not required, nor was there any need for them to stay at the hotel AMR provided; indeed, the distance from the hotel in Long Island City to the parking lot at the Bronx Zoo was approximately the same as their travel from their home to Citywide in the Bronx. (SOMF ¶¶ 46, 48-49, 51, 63).

The main claim in this case, from which all other claims flow, is that, during the Covid-19 Deployment, all time after the conclusion of each shift to the start of the next shift was compensable, including when Plaintiffs spent time performing non-work related tasks, or time during which they claim they stayed in the AMR-provided hotel. (SOMF ¶¶ 4, 47). Specifically, Plaintiffs allege they were "on call" and thus should have been paid as hourly employees for 24 hours per day during the entirety of the Covid-19 Deployment, thereby violating the overtime provisions of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs further allege that because they believe they were paid incorrectly, they are entitled to recovery under the timely pay provisions of the NYLL and that their alleged inaccurate pay violates the Wage Theft Protection Act's ("WTPA") wage notice and statement requirements.[2]

---

[2] Alston further alleges that she was terminated in retaliation under both 29 U.S.C § 215(a)(3) and NYLL § 215 (1)(a) for filing a petition against Citywide regarding overtime pay. (Ex. A). However, Plaintiffs fail to argue any aspect of this claim in support of their summary judgment motion and thus Plaintiffs waive any argument that they are entitled to summary judgment on this issue. (*See generally* Pfs MOL). As a result, this Court should grant Defendants' motion for summary judgment as to Alston's retaliation claims which are fully briefed in support of Defendants' motion.

Plaintiffs' motion for summary judgment fails to address the salient issues before this Court. Plaintiffs utterly fail to examine the pertinent legal issues at bar with respect to each of its claims or explain how the Court could ever reach a conclusion that Plaintiffs were not paid properly. The various causes of action alleged by Plaintiffs stem from or are duplicative of their claims of violations of the FLSA and NYLL provisions regarding overtime wages, i.e., that Plaintiffs should have received 24 hours' worth of wages for seven days per week, as opposed to being paid on a salary basis at 168 times their regular hourly rate, which is how they were paid. However, no rational juror could ever accept Plaintiffs' claims because, at all relevant times, Plaintiffs had a clear and mutual understanding of how they would be paid during the Covid-19 Deployment and their salaried pay exceeded what they would have been owed if they were paid as hourly employees. Moreover, it is indisputable that Plaintiffs were not required to stay in the AMR-provided hotel, or that they were unrestricted from doing whatever they personally chose to do during the remainder of their day. As a matter of fact and law, Plaintiffs' overtime wage claims have no merit.

Importantly, Plaintiffs have not moved this Court for summary judgment on any claims other than their FLSA and NYLL overtime claims and as such have waived any argument that they are entitled to summary judgment in their favor on any other causes of action. However, to the extent that the Court construes Plaintiffs' motion as seeking relief as to all wage-related claims, then Defendants submit that if Plaintiffs' overtime wage allegations fail, which they should, then the remainder of Plaintiffs' claims fall like dominos. The timely pay claims are wholly dependent on the existence of overtime violations, and if Plaintiffs were paid correctly, then there is no dispute that Plaintiffs received all requisite pay on time. Plaintiffs' other miscellaneous wage claims, such as wage notice and wage statement violations under the WTPA, must also fail if Plaintiffs' overtime wage claims fail because those claims are also premised on Plaintiffs' pay being inaccurate, which it was not.

Finally, Plaintiffs have asserted claims individually against Defendant Henty Halpert ("Halpert"), the sole owner of Citywide, and Defendant Warren Golden ("Golden" and together with Citywide and Halpert, collectively, "Defendants"), Citywide's Chief Operating Officer ("COO"), for alleged violations of the FLSA and NYLL. (SOMF ¶¶ 1, 4, 9-10). It is Plaintiffs' burden to establish that Halpert and/or Golden so controlled Plaintiffs' employment that the "economic reality" dictates the conclusion that either individual was, in fact, their employer. As no evidence exists showing that Plaintiffs' burden can be met, the claims against Halpert and Golden individually should not be allowed to trial.

This Court should deny Plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 in its entirety and grant Defendants' motion for summary judgment and dismiss Plaintiffs' Complaint in its entirety with prejudice.

## LEGAL ARGUMENT

## I.    LEGAL STANDARD FOR DENYING SUMMARY JUDGMENT.

Plaintiffs fail to set forth the legal standard for a motion for summary judgment. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, Nos. 15 Civ. 2739 and 16 Civ. 8569, 2023 WL 2746022, at \*4 (S.D.N.Y. Mar. 31, 2023) (alteration in original) (quoting *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007)).

In opposition to Plaintiffs' motion, Defendants submit the deposition testimony of Alston, Osorio, Golden, and Andrew Franze ("Franze"), the President of Local 741 Specialty Trades Union ("the Union"), the trade union of which Plaintiffs are members. (*See* Exs. C through F). Defendants'

4

counter-statement of undisputed material facts demonstrate that Plaintiffs' Complaint is ripe for summary judgment and that no rational factfinder could return a verdict for Plaintiffs.

## II.   PLAINTIFFS' OVERTIME WAGE CLAIMS FAIL AS A MATTER OF LAW.

### A.   Plaintiffs Cannot Proceed to Trial for Unpaid Overtime Because Their Salaried Pay Exceeded the Amount Owed Under the Fluctuating Workweek Method.

Pursuant to the FLSA, certain employees are entitled to overtime compensation for hours worked over a forty in a given workweek "at a rate not less than one and one-half times" the employee's regular rate. 29 U.S.C. § 207(a)(1). The NYLL does not contain specific provisions governing overtime compensation. Rather, overtime requirements under the NYLL are governed by regulations promulgated by the New York Department of Labor. *See* 12 NYCRR § 142:2.2. Pursuant to 12 NYCRR § 142:2.2, an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of the FLSA, as amended. The FLSA has a statute of limitations of two years, or three for willfulness, and the NYLL has a statute of limitations of six years. *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) (citing 29 U.S.C. § 255).

To establish liability under the FLSA or NYLL on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). It is well established that "the burden rest[s] upon . . . employees . . . to show by evidence rather than conjecture the extent of overtime worked, it being insufficient for them merely to offer an estimated average of overtime worked." *Id.* at 686; *see also Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331 (S.D.N.Y. 2005) (explaining that, in the absence of employer records, employees may carry their burden by submitting "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred."); *Joza v.*

*WW JFK LLC*, No. 07-CV-4153, 2010 WL 3619551, at *7 (E.D.N.Y. Sept. 10, 2010) (finding that a plaintiff's wage "allegations [cannot] rest solely upon his [or her] own bare recollections.").

Under 29 C.F.R. § 778.114, which is the U.S. Department of Labor's ("USDOL") regulation that governs the fluctuating workweek ("FWW") method of computing overtime, a pay rate includes an overtime premium only where the employer can show the existence of an express agreement between the parties to that affect. There is no requirement in the regulatory language regarding any sort of writing. The following requirements must be met to rely upon the FWW method as a defense to unpaid overtime claims pursuant to 29 C.F.R. § 778.114:

(a) An employer may use the fluctuating workweek method to properly compute overtime compensation based on the regular rate for a nonexempt employee under the following circumstances:

(1) The employee works hours that fluctuate from week to week;

(2) The employee receives a fixed salary that does not vary with the number of hours worked in the workweek, whether few or many;

(3) The amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest;

(4) The employee and the employer have a clear and mutual understanding that the fixed salary is compensation (apart from overtime premiums and any bonuses, premium payments, commissions, hazard pay, or other additional pay of any kind not excludable from the regular rate under section 7(e)(l) through (8) of the [FLSA]) for the total hours worked each workweek regardless of the number of hours, although the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay; and

(5) The employee receives overtime compensation, in addition to such fixed salary and any bonuses, premium payments, commissions, hazard pay, and additional pay of any kind, for all overtime hours worked at a rate of not less than one-half the employee's regular rate of pay for that workweek. Since the salary is fixed, the regular rate of the employee will vary from week to week and is determined by dividing the amount of the salary and any non-excludable additional pay received each workweek by the number of hours worked in the workweek. Payment for overtime hours at not less than one-half such rate satisfies the overtime pay

requirement because such hours have already been compensated at the straight time
rate by payment of the fixed salary and non-excludable additional pay. . . .

Plaintiffs do not even mention or attempt to address the FWW method in their motion for

summary judgment and thus concede its application. (*See generally* Pfs MOL). However, even if

the Court considers the issue, it is of import to note that there is no analogous FWW method under

the NYLL and its accompanying regulations that reflects the federal regulation. In *Thomas v. Bed*

*Bath & Beyond Inc.*, however, the Second Circuit affirmed the dismissal of a collective action filed

by a group of department managers who alleged that Bed Bath & Beyond had improperly used the

FWW method to pay them overtime. 961 F.3d 598, 600-01 (2d Cir. 2020). As here, *Thomas*

involved overtime claims brought under both the FLSA and NYLL and the Second Circuit

confirmed three principles: (1) payroll errors that result in a failure to pay the fixed weekly salary

in some workweeks will not necessarily defeat the application of the FWW method of overtime

compensation if the errors occur rarely and are promptly corrected; (2) an employee's schedule

need not fluctuate above and below 40 hours per week for the FWW method to be used; and (3)

the practice of allowing an employee to take paid time off on later dates after working on a holiday

or scheduled day off is not inconsistent with the FWW method. *Id.* at 600-01, 609, 611-12. It can

be inferred from *Thomas* that the FWW method is lawful under the NYLL, otherwise the Second

Circuit would not have affirmed the dismissal of the NYLL state law claims in addition to the

dismissal of the FLSA claims. As a result, the issue is whether Plaintiffs had "a clear and mutual

understanding that the[ir] fixed salary [was] compensation . . .for the total hours worked each

workweek regardless of the number of hours." *See* 29 C.F.R. § 778.114(a)(4).

Here, in the ordinary course of the provision of emergency services by Citywide in the New

York City area, Citywide pays its EMTs pursuant to a collective bargaining agreement ("CBA")

between Citywide and the Union. Subject to the terms of the CBA, Citywide's EMTs are paid by

hourly rate, which varies with seniority and experience, and they receive overtime for weekly hours worked over forty. (SOMF, ¶ 22). AMR deployments for FEMA, however, are paid on a salary basis pursuant to an agreement between Citywide and the Union which has been in effect since the inception of Citywide's relationship with AMR in 2010 and EMTs are reminded of the payment arrangement for each deployment. (SOMF, ¶ 22; Ex. E, Golden Dep. at T26:17-25, 36:21-37:3; Ex. F, Franze Dep. at T12:18-24, 13:16-25). Golden testified that the agreement for deployed employees to be paid on a salary basis was "a verbal agreement" with the Union pursuant to the requirements of its CBA. (Ex. E, Golden Dep. at T24:2-9; SOMF, ¶ 26). This agreement was derived following "lengthy discussions" and that the parties "worked out the numbers to benefit the employee, so they would get more than if they were on the clock·during their actual hours," as both Citywde and the Union believed it is this salaried arrangement "that attracts employees to do [a deployment]." (Ex. E, Golden Dep. at T24:2-9; SOMF, ¶ 26). Union representative Franze similarly testified that "Citywide employees were told how the pay would be broken out and that they agreed to it" and he described the same payment terms of the verbal agreement to which Golden testified. (Ex. F, Franze Dep at T13:14-25, 14:10-14; SOMF, ¶ 29). As a result, there was a clear and mutual understanding between Citywide and the Union that deployed EMTs would receive a weekly salary derived from the employee's regular hourly rate for 168 hours (i.e., 24 hours multiplied by 7 days). (Ex. E, Golden Dep. at T22:12-23:11, T25:12-26:7, 30:13-21, 32:9-16 36:25-37:3, 37:19-38-11, 38:19-39:3; Ex. F, Franze Dep at T13:14-25, 14:10-14; SOMF, ¶ 24, 30).

EMTs to be deployed were ordered to report to Citywide's headquarters on or around April 1, 2020 so that the process for deployment, including how EMTs would be compensated for purposes of the deployment, could be explained to them in-person. (Ex. C, Alston Dep. at T106:15-107:3; Ex. D, Osorio Dep. at T26:14-25; SOMF, ¶ 33). All EMTs who were deployed during the

Covid-19 Deployment personally reported to Citywide's headquarters, including Alston and Osorio. (Ex. C, Alston Dep. at T106:15-107:3; SOMF, ¶ 34). Although they would not be working for 24 hours per day 7 days per week, Orlando Serrano ("Serrano"), a supervisor at Citywide, explained to the EMTs who were to be deployed, including Alston and Osorio, that they would receive a salary for 168 hours per week at their regular hourly pay rate during the entirety of the Covid-19 Deployment. (Ex. C, Alston Dep. at T109:18-19; Ex. D, Osorio Dep. at T27:17-25, 31:2-5; SOMF, ¶ 36). Following Serrano's explanation of how they would be paid for the Covid-19 Deployment, Alston and Osorio did not raise any questions or complaints regarding the deployment pay structure at this meeting. (Ex. C, Alston Dep. at T107:10-108:20; Ex. D, Osorio Dep. at T31:16-19; SOMF, ¶ 37). Alston and Osorio each testified, and payroll records confirm, that they were paid for the Covid-19 Deployment pursuant to the terms explained by Serrano. (Ex. C, Alston Dep. at T117:19-24; Ex. D, Osorio Dep. at T74:3-7; Exs. O and P; SOMF, ¶ 38). Evidenced by their time records and testimony regarding hours worked, Alston and Osorio's total compensation well-exceeded the compensation that they would have been paid if Citywide had paid only the hours worked, even if several hours of daily travel time is included in the calculation. (Exs. L, O, and P; SOMF, ¶ 39).

As Golden testified, Citywide and the Union came to their agreement to pay deployed employees via salary by devising a salary "which would cover up to 125 hours of work under straight time and overtime." (Ex. E, Golden Dep. at T25:12-26:7, 38:19-39:3; SOMF, ¶ 23). Osorio testified as to the time keeping process, stating that "the [F]ire [D]epartment·has a method . . . to track you," and that the deployed Citywide employees "log[ged] onto their system on the radios they would give us" and then "when we are done dispatch will log us off." (Ex. D, Osorio Dep. at T62:12-16; SOMF, ¶ 56). Alston testified that if the equipment was "not working, then [she] would go to a tent [and the FDNY] would have personnel there that would log [her] in." (Ex. C, Alston

Dep. at T230:13-20). FDNY records show that Alston worked shifts that ranged from 11 to 13 hours during the Covid-19 Deployment. (Ex. L; SOMF, ¶ 42). According to FDNY records, Osorio's first recorded shift during the Covid-19 Deployment was on April 6, 2020 at 3:22 p.m. until the next day at 3:00 a.m. (Ex. L at DEFEFNDANTS 320; SOMF, ¶ 57). Osorio has no further shifts recorded in the FDNY time records for the Covid-19 Deployment. (*See* Ex. L; SOMF, ¶ 58). The length of the shift recorded by Osorio is approximately 12 hours, which is consistent with the length of shifts worked by Alston during the Covid-19 Deployment. (Ex. L; SOMF, ¶ 59). The inability for Citywide to supervise time tracking when its employees are deployed and under the direction of other entities is the exact reason that EMT pay is converted to a salary basis for the duration of any deployment because accuracy of hours cannot be independently verified by Citywide. (Ex. E, Golden Dep. at T25:12-17, 66:7-19, 89:16-24; SOMF, ¶ 60). Osorio testified that he performed this same approximate 12-hour schedule each day that he worked "from sometime after [he] first started until the end" of the Covid-19 Deployment, which is consistent with the FDNY's time records for other deployed individuals. (Ex. D, Osorio Dep. at T62:6-9; *see* Ex. L; SOMF, ¶ 62).

The FWW method calculation is as follows for Alston's pay rate of $30.00 per hour:

Compensation as an Hourly Employee:
| | | | |
|---|---|---|---|
| 40 Regular Hours | x | $30.00 = | $1,200.00 |
| 85 Overtime Hours | x | $45.00 = | $3,825.00 |
| Total Wages for 125 Hours/Week | | = | $5,025.00 |

Compensation as a Salaried Employee:          $5,040.00

As can be seen from the calculation above, assuming *arguendo* that Alston had worked 125 hours in a single week, which the records show is not what occurred, the pay that she received as a salary still exceeded what she would have earned on an hourly basis at $30.00 per hour with overtime pay for that same number of hours. (SOMF, ¶¶ 11, 70; Ex. J at DEFENDANTS 128; Ex.

Q at DEFENDANTS 141). The same result is true when applying Osorio's pay rate of $17.00. (SOMF, ¶ 12; Ex. D, Osorio Dep. at T29:19-24). As "the clear and mutual understanding does not need to extend to the specific method used to calculate overtime pay," as long as the employee receives the pay as agreed and "[t]he amount of the employee's fixed salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours the employee works is greatest," then the FWW method payment is lawful. *See* 29 C.F.R. § 778.114(a)(3). As such, Defendants are entitled to summary judgment dismissing the overtime claims.

**B.** **Plaintiffs Were Not "On Call" So as to Give Rise to Compensable Time for 24 Hours Per Day Seven Days Per Week Which Is Fatal to Their Unpaid Overtime Claims.**

Plaintiffs' sole argument in support of their motion is that "Plaintiffs were on call 24/7 and as such "Plaintiffs should have been paid for the first 40 regular hours at their regular rate, and for the rest of 128 overtime hours at the overtime rate of one and half times the regular rate as required by the FLSA." (Pfs MOL at 4; *see* Ex. A, ¶¶ 28, 36). Although Congress did not define the term "work" in the FLSA, the Second Circuit has defined "work" as "exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities." *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013). "Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits constitutes compensable hours of work." 29 C.F.R. § 553.221(c). However, where employees "on call are not confined to their homes or to any particular place, but may come and go as they please, provided that they leave word where they may be reached, the hours spent 'on call' are not considered as hours worked." 29 C.F.R § 778.223; *O'Neill*, 968 F. Supp. 2d at

581. "Whether the time [during which an employee can leave the job] is long enough to enable him to use the time effectively for his own purposes depends upon all the facts and circumstances of the case." *Id.*

Accordingly, the first issue is whether the time when Plaintiffs were working their shifts during the Covid-19 Deployment constitutes "work" under the FLSA. *Nonnenmann v. City of New York*, No. 02-CIV-10131, 2004 WL 1119648, at *26 (S.D.N.Y. May 20, 2004). "Once decided, the factfinder must 'decide as a question of fact, not only how much of plaintiff's time . . . [falls] within the court's definition of 'work' and would be compensable, but also how much of that time was spent with the employer's actual or constructive knowledge." *Id.* (quoting *Capasso v. Metropolitan Transp. Auth.*, 198 F. Supp. 2d 452, 459 (S.D.N.Y. 2002)). "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 64 (2d Cir. 1997) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)). When an employer requires employees to remain in a fixed location while on call, the courts and USDOL are likely to consider such "on-call" time to be compensable under the FLSA. *Nonnenmann*, 2004 WL 1119648, at *27.

Moreover, the Portal-to-Portal Act exempts employers from compensating employees under the FLSA "for or on account of" time spent "traveling to and from the actual place of performance of the principal activity or activities" of employment and any activities which are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a); *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008). The Supreme Court of the United States has interpreted this provision to mean that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'" *Id.* (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005)). While employees need not be compensated "for or on account of" commuting to and from work, they must be compensated for any work performed during a commute that is "integral and

indispensable" to a principal activity of their employment. *Id.* (quoting *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995)); *see also* 29 C.F.R. § 785.41 ("Any work which an employee is required to perform while traveling must, of course, be counted as hours worked."). In sum, for a plaintiff to prevail under the FLSA, as amended by the Portal-to-Portal Act, they must demonstrate that he or she was performing an employment activity during a commute that (1) constitutes work under the FLSA, and (2) is an integral and indispensable part of their duties.

Plaintiffs only cite three cases in their entire moving memorandum of law. (Pfs MOL at 5). The first is *Armour*, 323 U.S. at 133, a 1944 case cited merely for the proposition that on-call hours are compensable, but in order for the holding of this nearly century old case to be helpful, Plaintiff still needs to demonstrate that Plaintiffs were actually on call during the Covid-19 Deployment. The second case is *Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002), which Plaintiffs do not attempt to analogize to this case for the simple reason that they cannot because the court's holding in *Moon* is supportive of Defendants' position that Plaintiffs were not on call. (Pfs MOL at 5). Specifically, in *Moon*, as here, there was a dispute between the parties as to whether the plaintiff was on call when he stayed in a hotel provided by his employer when he was not working. *Id.* at 212-13. The *Moon* court found as follows:

> The Court credits [the plaintiff]'s general account that he moved into the hotel because he was instructed to assume [another employee]'s duties, which required him to be available during the evening and night-time hours, and the Queens apartment where he lived at the time was simply too far away to perform those duties effectively and to the satisfaction of the hotel.
>
> This does not, however, amount to a finding that the hotel required [the plaintiff] to stay in the hotel overnight, whether in the basement or in a vacant guest room. Presumably, had [the plaintiff] lived closer to the hotel, there would have been no need for him to live in the hotel, and he could have promptly come in to do overnight maintenance work whenever necessary. [The plaintiff] himself admits that he was permitted to leave the hotel at night as long as he remained available and the hotel staff could page him when necessary for emergency calls. . . . Thus, *the hours that [the plaintiff] spent in sleep or recreation during the night were not hours in which he was "at work" on a standby basis, required to be on the*

13

*premises*—save for those hours when he actually was called upon to perform particular tasks. *Id.* at 213-14 (emphasis added).

The court in *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013), the third and final case that Plaintiffs cite, (Pfs MOL at 5), conducted an in-depth examination of the *Moon* court's holding. *Id.* at 581-82. The *O'Neill* court then denied summary judgment on the basis that "there [was] conflicting evidence as to whether [the] [p]laintiff was able to use time spent 'on-call' for her personal use." *Id.* at 582.

The court's holding in *Moon* demonstrates with exactitude the reason that Plaintiffs were not on call so as to have their time away from work be compensable and the *O'Neill* court's holding reveals that Plaintiffs have not shown the existence of a genuine dispute of material fact as to whether they could use their time when not clocked in for personal use. Here, Alston and Osorio each testified regarding their experience during the Covid-19 Deployment. (SOMF, ¶¶ 41-64). Alston testified that, for the duration of the Covid-19 Deployment, she was offered a hotel room in Long Island City by FEMA. (Ex. C, Alston Dep. at T103:2-104:14; SOMF, ¶ 45). Alston and Osorio both admitted that no one stated that they were required to stay at the hotel during their off hours. (Ex. C, Alston Dep. at T140:9-142:3; Ex. "D", Osorio Dep. at T70:2-21; SOMF, ¶¶ 47-48, 63). Alston testified that when she was not in the hotel, that there was "socializing during the deployment." (Ex. C, Alston Dep. at T141:8-11). Moreover, Osorio admitted during his deposition that no one stated that he was required to stay at the hotel during his off hours and that he stayed at the hotel because he wanted "to ensure that [his] supervisor kn[e]w that [he was] there and ready for a call whenever we [were] resting." (Ex. "D", Osorio Dep. at T70:2-21; SOMF, ¶¶ 47, 63). Plaintiffs' claim throughout their motion papers that Plaintiffs were told that they were on call 24/7 during the Covid-19 Deployment, but Plaintiffs' statements are misleading and not based in fact. Plaintiffs have submitted no competent admissible evidence whatsoever that they were required to

14

stay in the hotel and, as explained above, the facts are indisputable that Plaintiffs only worked approximately 12-hour shifts for the duration of the Covid-19 Deployment and that no one told them they had to stay in the hotel whenever they were not working. (SOMF, ¶¶ 42, 47-48, 62-63).

It is well settled that employees who bring suit under the FLSA or NYLL for unpaid overtime compensation have the burden of proving that they performed work for which they were not properly compensated. *Anderson*, 328 U.S. at 686-87. Where, as here, an employer proffers time records in accordance with the FLSA and NYLL, and the employee was paid in accordance with those records, any inaccuracies in such records are the result of the employee's failure to accurately report his or her time, such as Osorio's failure to ensure he was logging in and out each day. *See id.*

Plaintiffs would need to show that they in fact performed work for which they were improperly compensated and produce sufficient evidence to verify the amount and extent of that work, which Plaintiffs have clearly failed to do here as evidenced by the record. *See John Schepanski Roofing & Gutters v. Roberts*, 133 A.D.2d 757, 757, 520 N.Y.S.2d 46 (2d Dep't 1987) (holding that where it is alleged that "the employer has failed to keep proper records, the approximation must have at least some rational basis" based on the law and facts). Plaintiffs' deposition testimony demonstrates that Plaintiffs do not allege exactly how much time they did or did not work in any 24-hour period except to offer generalized speculation and nonsensical exaggeration such as Alston's incredible testimony that she was "working up to 24 hours a day, if not more." (Ex. C, Alston Dep. at T235:21-22; SOMF, ¶ 52). Plaintiffs' own testimony shows that the conditions during the Covid-19 Deployment were not so circumscribed that they restricted Plaintiffs from effectively using time away from work for personal pursuits. *See* 29 C.F.R. § 553.221(c). Thus, Plaintiffs were not "on call" 24 hours per day and resultingly, their pay under the FWW method was lawful. Finally, seven pages of Plaintiffs' fourteen-page moving

memorandum of law in support of their motion is merely a recitation of Plaintiffs' calculation of purported overtime damages as set forth in the Complaint. (Pfs MOL at 7-14). As explained above, Plaintiffs cannot succeed on their overtime claims and thus cannot even get to the issue of damages. The FLSA and NYLL overtime claims should be dismissed.

## III.    PLAINTIFFS' WAGE THEFT PREVENTION ACT CLAIMS MUST BE DISMISSED AS A MATTER OF LAW FOR THE SAME REASONS THAT PLAINTIFFS' OVERTIME CLAIMS FAIL.

Plaintiffs allege that Defendants failed to provide Plaintiffs with proper notices and wage statements in violation of the WTPA, (Ex. B, ¶¶ 7, 61), and further focus on a purported failure to provide "written notice" of pay in their moving memorandum of law. (Pfs MOL at 3). By virtue of the fact that the FLSA and NYLL overtime claims are ripe for dismissal, Plaintiffs' WTPA wage notice and statement claims under NYLL § 195 are likewise subject to dismissal. NYLL § 195(1) requires employers to provide employees with written wage notices indicating an employee's rate or rates of pay and basis thereof within ten business days of the start of employment. *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 475-76 (S.D.N.Y. 2015) (citing N.Y. Lab. Law § 195(1)). NYLL § 195(3) requires that employers "furnish each employee with a statement with every payment of wages, listing" information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 195(3)).

Here, Plaintiffs were already existing employees of Citywide at the commencement of the Covid-19 Deployment. Because they were existing employees, there was no statutory requirement to provide them with a wage notice for their Covid-19 Deployment pay as NYLL § 195(1) merely requires an employee to receive a wage notice within 10 days of hire. Plaintiffs' hourly rates that were used to calculate their salary for the Covid-19 Deployment were the same hourly rates that they were already being paid as EMTs pursuant to the CBA. As they were existing employees, all

that was required under this special volunteer assignment is that the FWW method pay requirements were met, which they were as explained in Point II.A, *supra*.

Furthermore, Plaintiffs were provided with wage statements as required by NYLL § 195(3) because Plaintiffs received pay stubs that contained the information required by the statute, including Citywide's name, address, the employee's name, and wages paid specifying the applicable hourly rates while also indicating any deductions. (Exs. O and P). Thus, Plaintiffs' claim under NYLL § 195(3) is a mere technical legal argument regarding Citywide's purported violation of the statute as it relates to their NYLL overtime claims. Put simply, by way of Plaintiffs' allegations that they were not properly paid overtime wages, they are asserting that they were not technically provided accurate wage statements which thereby violates NYLL § 195(3). However, because Plaintiffs' FLSA and NYLL overtime claims must be dismissed for the reasons discussed in Point II, *supra*, their paystubs were not inaccurate. Plaintiffs' WTPA claims must be dismissed.

IV.    **THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PLAINTIFFS' TIMELY PAY CLAIMS UNDER NEW YORK LABOR LAW FAIL FOR THE SAME REASONS THAT PLAINTIFFS' OVERTIME CLAIMS FAIL.**

Plaintiffs allege that Defendants did not timely pay Plaintiffs in full for all hours worked at their agreed-upon rate of pay in violation of Section 191 of the NYLL. The pertinent statutory provision provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." NYLL § 191(2). Section 191 of the NYLL contains no express right of action to an employee for a claim of damages for an employer's violation of this provision. Notably, Section 198 of the NYLL, the NYLL's remedy section, expressly affords relief for unpaid wages, not for late paid wages.

Pre-2019, employers typically faced a relatively minor civil fine for a frequency of payment violation. *See id.* On September 10, 2019, the Appellate Division of the New York Supreme Court for the First Department held in *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144,

1146-47, 107 N.Y.S.3d 286 (1st Dep't 2019), that workers covered by Section 191 of the NYLL who receive full pay but are paid "late" in violation of the frequency of payment provision have a private cause of action and can recover liquidated damages. In so holding, the court reasoned that (1) NYLL Section 198 references a "wage claim" against an employer; (2) the remedies provided by Section 198(1-a) apply to "violations of article 6," of which Section 191(1)(a) is a part; (3) the term "underpayment" can encompass late payments because "underpay" is defined as "to pay less than what is normal or required" and failing to pay wages in compliance with Section 191 is less than what is required.

Despite the *Vega* court's non-binding decision to depart from established precedent, numerous New York federal and state courts have held that there is no private right of action under Section 191 of the NYLL for purely untimely payments. *See, e.g., Espinal v. Sephora USA, Inc.*, No. 22 Civ. 03034, 2022 WL 16973328, at *9 (S.D.N.Y. Nov. 16, 2022) (finding that while "the First Department's decision in *Vega* provides a definitive ruling on the question of whether a private right of action is available under NYLL § 191(1)(a)," the Southern District of New York is "not bound by *Vega* inasmuch as it comes from an intermediate appellate state court."); *Hussain v. Pak. Int'l Airlines Corp.,* No. 11-CV-932, 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment and recordkeeping."); *Hunter v. Planned Bldg. Servs. Inc.*, No. 715053/2017, 2018 N.Y. Slip Op. 31541(U), 2018 WL 3392476, at *2 (N.Y. Sup. Ct. June 11, 2018) ("[N]o private right of action under NYLL §198 . . . for a frequency of payment violation of NYLL §191(1)(a)(i) where there is no claim for unpaid wages.").

Here, Plaintiffs were paid their agreed-upon salary for the Covid-19 Deployment on a weekly basis. (Exs. O and P). Thus, Plaintiffs' claim under NYLL § 191 is a mere technical legal argument, similar to the assertion of their WTPA claims. Put simply, by way of Plaintiffs'

allegations that they were not properly paid overtime wages, they are asserting that they were not technically paid on time which thereby violates NYLL § 191. However, because Plaintiffs' NYLL overtime claims must be dismissed for the reasons discussed above, they were not paid late as they received an accurate paycheck on each pay date during the Covid-19 Deployment. It is indisputable that Plaintiffs were timely paid and this cause of action cannot survive summary judgment.

**V.    PLAINTIFFS' CLAIMS AGAINST DEFENDANTS GOLDEN AND HALPERT MUST BE DISMISSED AS A MATTER OF LAW AS INDIVIDUALS BECAUSE THEY DID NOT SO CONTROL THE PLAINTIFFS' EMPLOYMENT THAT THE "ECONOMIC REALITY" IS THAT THEY ARE PLAINTIFFS' EMPLOYER.**

Plaintiffs' claims against Golden and Halpert as individuals must be dismissed because they were not Plaintiffs' employer. To establish a claim under the FLSA, plaintiffs must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiffs are "employees" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) (citing 29 U.S.C. § 203(d)). The Second Circuit adopted the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (citation omitted). "No one of the four factors standing alone is dispositive," however, and the "totality of the circumstances" must be considered. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Thus, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." *Irizarry*, 722 F.3d at 109.

The NYLL defines an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

NYLL § 190(3). In determining whether an individual is an "employer" within the meaning of the NYLL, New York courts examine the same "economic reality" factors and totality of the circumstances as under the FLSA. *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625, 625-26, 967 N.Y.S.2d 19 (1st Dep't 2013); *Matter of Carver v. State of N.Y.*, 87 A.D.3d 25, 30, 926 N.Y.S.2d 559 (2d Dep't 2011) (quoting *Herman v RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

None of the four economic realities factors apply to Halpert. Halpert is the sole owner of Citywide. (SOMF, ¶ 9; Ex. G). However, he does not hire or fire employees. This duty is undertaken by supervisory or managerial employees. Plaintiffs' Union negotiates to determine the wages and work conditions of the employees, not Halpert. (SOMF, ¶¶ 13; Ex. I; Ex. C, Alston Dep. at T23:2-6; Ex. E, Golden Dep. at T26:17-25, 36:21-37:3; Ex. F, Franze Dep. at T5:15-23, 12:18-24, 13:16-25). As an owner, Halpert is not involved in the daily supervision of employees such as in a small restaurant or construction business where an owner-operator may be actively giving orders to employees and interacting with them directly. Moreover, Plaintiffs are unable to dispute that they have never had any personal interaction with Halpert. Under facts such as these, evidence of Halpert's ownership of Citywide, without more, "is insufficient to demonstrate 'employer' status." *See Irizarry*, 722 F.3d at 109.

As it relates to Golden, as COO of Citywide, Golden is an employee with supervisory and managerial authority. (SOMF, ¶ 9; Ex. E, Golden Dep. at T180:3-4). While Golden maintains the power to hire and fire employees in his capacity as COO, he cannot be construed to be Plaintiffs' employer based on this fact alone. With regard to Plaintiffs' wage claims, there is also no evidence to show that Golden directly supervised or controlled Plaintiffs' individual work schedules during the Covid-19 Deployment as those functions were carried out by AMR and the FDNY. (SOMF, ¶¶ 21, 44, 49, 56, Ex. D, Osorio Dep. at T62:12-16; Ex. C, Alston Dep. at T87:11-19, 228:5-25; Ex. L). Golden had no authority to determine the rate and method of payment for employees as

such terms and conditions of employment are duly bargained with the Union pursuant the CBA, including Citywide's long-standing agreement with the Union regarding paying EMTs on a salary basis during deployments. (SOMF, ¶ 13; Ex. I; Ex. C, Alston Dep. at T23:2-6; Ex. E, Golden Dep. at T26:17-25, 36:21-37:3; Ex. F, Franze Dep. at T5:15-23, 12:18-24, 13:16-25). Golden did not maintain Plaintiffs' employment records in his capacity as COO as those functions are carried out by supervisory and other administrative employees at Citywide such as those in the Human Resources and Payroll departments. (SOMF, ¶¶ 66-67, 70, 73, 87; Exs. R and Z).

It is indisputable that the economic reality of the situation shows that neither Halpert nor Golden were Plaintiffs' employer. Plaintiffs' sole employer is Citywide. Plaintiffs' claims asserted against Halpert and Golden individually must be dismissed.

## CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment should be granted and Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York          **PECKAR & ABRAMSON, P.C.**
      July 31, 2023                    *Attorneys for Defendants*

                                   By: */s/ Gregory R. Begg*
                                      GREGORY R. BEGG
                                      1325 Avenue of the Americas, 10th Floor
                                      New York, New York 10019
                                      (212) 382-0909
                                      gbegg@pecklaw.com